**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

OLGA TARASENKO                                                                      PLAINTIFF

v.                                            No. 4:14CV00417 JLH

UNIVERSITY OF ARKANSAS, et al.                                              DEFENDANTS

**OPINION AND ORDER**

Olga Tarasenko was a tenured biology professor at the University of Arkansas at Little Rock.[1] She was terminated for cause in the fall of 2012 for allegedly making discriminatory and threatening comments to a student.  Tarasenko alleges that the University and  other defendants discriminated against her due to her sex and her national origin and violated her Fourteenth Amendment due process rights during the investigation and appeals process.  Based on those allegations, she has asserted claims for violations of her due process, equal protection, and free speech rights.  She also alleges that she was subjected to sex discrimination, national origin discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*  Lastly, she alleges under state law that the defendants violated the Arkansas Civil Rights Act (Ark. Code Ann. § 16-123-105)[2], breached her contract, tortiously interfered with her contract, and committed the tort of outrage.

---

[1] UALR is a campus of the University of Arkansas System.

[2] The Arkansas courts look to federal courts for guidance when interpreting the Arkansas Civil Rights Act.  *Island v. Buena Vista Resort*, 352 Ark. 548, 556, 103 S.W.3d 671, 675 (2003). Consequently, Tarasenko's Arkansas Civil Rights Act claims stand or fall with her federal civil rights claims and will not be analyzed separately.  *Gladden v. Richbourg*, 759 F.3d 960, 969 (8th Cir. 2014).

The defendants have moved to dismiss the complaint for failure to state a claim upon which relief may be granted.  Tarasenko has responded, and the defendants have replied.  For the following reasons, the motion to dismiss is granted.

**I.**

Tarasenko began as a tenure track assistant professor in the UALR biology department on July 1, 2005.[3]  ¶ 34.  She was granted tenure on April 13, 2011, and was promoted to associate professor effective July 1, 2011.  ¶¶ 35 and 36.

In the spring of 2009, a graduate student named Souzan Eassa selected Tarasenko as her major Ph.D. advisor.  ¶ 38.  On February 14, 2012, Eassa submitted her proposal to her dissertation committee, which did not approve of it.  ¶¶ 41 and 42.  Eassa blamed Tarasenko for the lack of approval and confronted her on February 15, 2012, as she was entering a class that she was about to teach.  ¶¶ 43 and 44.  Eassa claims that Tarasenko said, in front of the class, that Eassa was Iraqi and would kill a particular student.  ¶ 46.  On February 16, 2012, according to Eassa, Tarasenko said that she would kill Eassa and "made a gun gesture with her hand and pointed it at Plaintiff [sic]."  ¶¶ 48 and 49.  According to Tarasenko, no reports were made regarding these two incidents for two months.  ¶¶ 47 and 50.

On May 8, 2012, Tarasenko suggested that Eassa apply for an "Incomplete" grade because otherwise Eassa would receive no credit.  ¶ 51.  The following day, Tarasenko filed an Academic Integrity Report on Eassa notifying the University that Eassa had committed academic fraud.  ¶ 52.  Sometime after this, Haydar Al-Shukri, who was chairman of the UALR Applied Science

_____

[3] This statement of facts is taken from Tarasenko's complaint.  All factual citations are to the paragraph numbers in the complaint, Document #1.

department, solicited written statements from students setting forth allegations against Tarasenko, including those pertaining to the events of February 15 and 16. *Id.* ¶ 54. On May 11, 2012, University administrators, including Patrick Pellicane (Dean of the graduate school), Al-Shukri, Michael Gealt (Dean of the College of Science and Mathematics), and Johanna Miller Lewis (Associate Dean of the graduate school) held a meeting with Eassa and several other students. ¶ 53. The same administrators, along with John Bush (Chairman of the Biology Department) and Tom Lynch[4] held a meeting on May 15, 2012 which resulted in Pellicane and Gealt visiting the University legal counsel, Mary Abernathy, after which Pellicane wrote a letter to Tarasenko outlining the allegations against her but not naming her accusers. ¶¶ 57 and 58.

On May 29, 2012, Interim Provost Sandra Robertson, Associate Vice Chancellor Christina Drale, Pellicane, Gealt, Lewis, and Al-Shukri held a meeting with Tarasenko to discuss the allegations. ¶ 65. Prior to this meeting, Lewis announced that she was assuming the role of Eassa's faculty advocate. ¶ 69. Tarasenko alleges that investigating student allegations against a professor is outside the scope of Drale and Lewis' job responsibilities. ¶¶ 67 and 68. At the May 29 meeting, Tarasenko informed the administrators that Bush made the following statements to her between 2006 and 2012: "No grants-gulag," "No Happy Students-gulag," and "No publications-gulag." ¶¶ 75 and 76. A gulag is a concentration camp where the former Soviet Union imprisoned people and Tarasenko's country of origin is a former member of the Soviet Union.[5] ¶¶ 77 and 78.

---

[4] Lynch is not named as a defendant in the complaint, nor is his position identified.

[5] The complaint never states which of the former members of the Soviet Union is Tarasenko's country of origin.

Pellicane initiated various meetings with students and administrators even though no University policy provided for him to do so.  ¶¶ 83-86.  Gealt admitted he thought Al-Shukri was biased, but Al-Shukri continued his involvement with the investigation.  ¶ 88-89.  On June 6, 2012, Gealt and Pellicane authored a letter to Robertson stating there was sufficient evidence to pursue further investigation of the allegations against Tarasenko.  ¶¶ 90 and 94.  Al-Shukri, Drale, and Abernathy also were involved in drafting this letter.  ¶¶ 90-93.

A meeting was held with Tarasenko, Eassa, Drale, and Mindy Wirges (from the human resources department) regarding Eassa's grade appeal even though no policy exists allowing or requiring personnel from the human resources department to be present at such a meeting.  ¶¶ 97-103.  Although Drale provided Wirges with the documents that Eassa had provided supporting her appeal, she did not provide Wirges with any documentation that Tarasenko had provided.  ¶¶ 98-99.

On July 23, 2012, Bush informed Tarasenko that the allegations against her were being investigated and that her fall duty assignments were being changed pending the outcome.  ¶ 106.  Two days later, on behalf of Eassa, Lewis filed a charge of  discriminatory harassment against Tarasenko due to the February 14 and 15 incidents.  ¶ 107.  Wirges then initiated a human resources investigation into these incidents and interviewed Eassa and the other students making the accusations.  ¶¶ 108 and 110.  She also met with Tarasenko on August 17, 2012.  ¶ 111.  The students' identities were not divulged during that meeting.  ¶¶ 111-13.  On August 25, 2012, Tarasenko provided information controverting the allegations, including statements from other students present when the incidents took place.  ¶ 115.  A meeting took place on August 30, 2012 between Anderson, Gealt, Robertson, Drale, Wirges, Pellicane and Bush to discuss Tarasenko's

employment. ¶ 133.  This meeting was not authorized or required by any University policy relating to investigations.  ¶¶ 134-35.

During her investigation, Wirges did not interview the students who provided information opposite to that provided by Tarasenko's accusers. ¶ 116.  When Wirges concluded the investigation on August 27, she reported that her investigation substantiated the allegations.  ¶¶ 117-18.  Wirges attempted to conduct her investigation in accordance with the staff handbook, even though Tarasenko is governed by the faculty handbook, not the staff handbook; and even then Wirges did not comply with the staff handbook.  ¶¶ 119-22.  The University policies require: a copy of the discrimination charge must be provided to the accused; a discrimination charge should be filed within thirty days of the incident or a written waiver request be obtained and notification of approval must be maintained in the file; an initial hearing with certain parties; and the accused must be given seven days to respond to the discrimination charge; but none of these procedures was followed. ¶¶ 123-28.

Tarasenko also alleges that Wirges violated University policy by failing to inform Tarasenko of additional time needed to complete the investigation, failing to inform her of the status of the investigation, failing to inform her of the revised deadline for the completion of the investigation, failing to inform her and her supervisor of the investigative findings, failing to discuss alternative conflict resolution, and failing to provide Tarasenko with an opportunity to provide a rebuttal statement for the file and investigation report.  ¶¶ 129-32.

On September 18, 2012, Gealt informed Tarasenko he would recommend her termination the next day. ¶ 136.  Tarasenko still had not been provided with her accusers' identities. ¶ 137-38. On September 19, 2012, Gealt sent a memorandum to Robertson and UALR Chancellor Joel

Anderson, recommending that Tarasenko be terminated and that she be suspended immediately. ¶¶ 139-40.  Robertson and Anderson approved the termination recommendation. ¶ 141.  Anderson also determined that an emergency existed that required immediate suspension.  ¶ 143.  These determinations were discussed with the President of the University, Donald L. Bobbitt, and, ultimately, Bobbitt made the final decision to terminate Tarasenko.  ¶ 141-44.

When Tarasenko requested that an informal faculty hearing committee review her case, her request was declined; but she requested a formal faculty appeal hearing review it, and that request was approved.  ¶¶ 145-47.  The faculty appeal committee conducted a hearing between April 15 and May 2, 2013, receiving seven days of testimony, hundreds of pages of documents as evidence, and closing briefs.  ¶ 148 and ¶ 150.  By a vote of four to one, the committee found that the University had failed to provide sufficient evidence to dismiss Tarasenko's tenure for cause and that it had violated Tarasenko's due process rights in several instances.  ¶¶ 152-53.

Bobbitt rejected the committee's findings and terminated Tarasenko.  ¶ 156. The dismissal letter stated:

> I have reviewed the recommendations of Chancellor Anderson, Dean Gealt and the Grievance Panel concerning your dismissal . . .
>
> * * *
>
> As part of my review, I considered the entire record submitted to me (including the testimony, written records, the exhibits) and I agree with Chancellor Anderson and Dean Gealt that "cause", as defined by Board Policy 405.1, exists to support your dismissal for cause.  Based upon my professional judgment and my independent review of the record, I find that your conduct toward students and your dishonesty when questioned by University Officers indicates an unwillingness to perform your duties and fulfill your responsibilities to the University.

Document #1 at 67.  Tarasenko appealed this decision to the Board of Trustees, which upheld it. ¶¶ 158-59.  She then filed a timely EEOC charge and received a Dismissal and Notice of Rights. ¶ 160.

**II.**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The court must accept as true all of the factual allegations contained in the complaint, *Twombly*, 550 U.S. at 572, 127 S. Ct. at 1975, and must draw all reasonable inferences in favor of the nonmoving party. *Cole v. Homier Distrib. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010). The complaint must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

## III.

### A.   Substantive Due Process[6]

The Eighth Circuit has held that a tenured professor at a state university has "a substantive

due process right to be free from discharge for reasons that are 'arbitrary and capricious,' or in other

words, for reasons that are trivial, unrelated to the education process, or wholly unsupported by a

basis in fact." *Morris v. Clifford*, 903 F.2d 574, 577 (8th Cir. 1990). *See also Herts v. Smith,* 345

F.3d 581, 587 (8th Cir. 2003); *O'Neal v. Batesville Sch. Dist. No. 1*, E.D. Ark. No. 4:11CV00221-

KGB, 2013 WL 593515, at *3 (E.D. Ark. February 15, 2013).   "This is a high standard, as

'[s]ubstantive due process is concerned with violations of personal rights . . . so severe . . . so

disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely

careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power

literally shocking to the conscience.'" *Christiansen v. West Branch Community Sch. Dist.*, 674 F.3d

927, 937 (8th Cir. 2012) (quoting *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d

624, 634 (8th Cir. 2010)).   "The Due Process Clause of the Fourteenth Amendment is not a

guarantee against incorrect or ill-advised personnel decisions." *Id*. at 938 (quoting *Bishop v. Wood*,

426 U.S. 341, 350, 96 S. Ct. 2074, 48 L. Ed. 2d 984 (1976)).

---

[6] The University moved to dismiss Tarasenko's section 1983 monetary damage claims against it and its officials in their official capacities based on Eleventh Amendment immunity.  In response, Tarasenko has stated that she is asserting no such claims, so the Court will not address the issue.  The University also argues that the official capacity claims for injunctive relief against the administrators other than Bobbitt must be dismissed because Bobbitt is the only person who can reinstate her and because the complaint does not identify a policy or custom that would permit relief under *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).  Because the complaint fails to plead a claim upon which relief may be granted under section 1983, the Court need not reach those issues.

In Tarasenko's response brief, she states that examples of truly irrational and sufficiently outrageous conduct include:

> Defendant Bobbitt's one paragraph termination in opposition to the lengthy opinion of the Faculty Appeal Hearing Committee which took 7 full days of testimony from witnesses in this matter and reviewed hundreds of pages of evidence.   Defendant Bobbitt did not attend any of this hearing, review transcripts of that hearing, or review any of the evidence or briefs submitted at that hearing . . . Wirges's abject failures throughout her 'investigation' of this matter including the complete lack of knowledge related to the different handbooks . . . the inappropriate influence exerted on the entire process by Defendant Lewis . . . [c]omplete failures to comply with the investigation process by various Defendants are listed throughout the Complaint.

Document #17 at 7.   But these are procedural complaints and allegations of negligence, not examples of conduct that would violate Tarasenko's right to substantive due process.

Bobbitt terminated Tarasenko based on the allegations that Tarasenko had made discriminatory and threatening remarks to a student – that is the conduct on which Tarasenko's substantive due process claim must be based.   Tarasenko does not allege that Bobbitt's decision to terminate her employment was inspired by malice or sadism, nor does she allege that the reasons given for her termination are trivial, unrelated to the educational process, or wholly unsupported by a basis in fact.   Tarasenko alleges in her complaint that Eassa reported that she made an "ethnically charged comment" in class, "saying to another student that Eassa was Iraqi and would kill the other student," and that Tarasenko threatened to kill Eassa.   ¶¶ 47 and 49.   The comments that Eassa reported are grounds for termination of Tarasenko's employment, and her report of them is some factual basis for them.   Tarasenko's substantive due process rights were not violated.   *Cf. Christiansen*, 674 F.3d at 938 (complaint alleging that a school bus driver was terminated based on false accusations that the school knew or should have known were false failed to state a substantive due process claim); *Herts*, 745 F.3d at 588 (non-renewal of a teacher contract when the teacher

testified in a civil rights case against the school district did not violate the teacher's substantive due process rights).

## B.       Procedural Due Process

To establish a violation of due process, the plaintiff must prove that she was deprived of some life, liberty, or property interest without due process. *De Llano v. Berglund*, 282 F.3d 1031, 1034 (8th Cir. 2002). While Tarasenko's status as a tenured professor gave her a property interest in continued employment, the allegations in her complaint do not show that her due process rights were violated.  "A public employee with a protected property interest in continued employment receives sufficient due process if he receives notice, an opportunity to respond to the charges before his termination, and post-termination administrative review." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001).  "A pre-deprivation hearing need only provide the employee with 'oral or written notice of the charges against him [or her], an explanation of the employer's evidence, and an opportunity to present his [or her] side of the story.'" *Floyd-Gimon v. Univ. of Ark. For Med. Sciences ex rel. Bd. of Trustees of Univ. Of Ark.*, 716 F.3d 1141, 1146 (8th Cir. 2013) (quoting  *Cleveland Bd. Of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985)).  "[T]he pretermination 'hearing,' though necessary, need not be elaborate." *Loudermill*, 470 U.S. at 545, 105 S.Ct. at 1495.

Tarasenko first received notice of the allegations against her in a meeting without her accusers named on May 15, 2012.  ¶¶ 55-57.  Sometime after this meeting, a letter outlining the allegations was provided to her.  ¶ 57.  University administrators met with Tarasenko on May 29, 2012, to discuss the allegations.  ¶¶ 65 and 82.  On August 17, 2012, Tarasenko met with Wirges regarding the ongoing investigations and still was not informed of her accusers' identities.  ¶ 111.

Tarasenko submitted information to Wirges on August 25, 2012 controverting the allegations. ¶ 115. Taking all the facts alleged in the complaint as true, as late as September 18, 2012, Tarasenko had not been informed of her accusers' identities. ¶ 136. However, by her own admission Tarasenko knew enough to submit information controverting the allegations on August 25, 2012. ¶ 115. She had notice of the charges against her and an explanation of the evidence.

Tarasenko was also given the opportunity to respond. As noted, a meeting took place on May 29, 2012, during which administrators discussed the allegations with Tarasenko. ¶ 65. Tarasenko submitted information in opposition to the allegations on August 25, 2012. ¶ 115. Thus, she had an opportunity to respond to the allegations, and she took advantage of that opportunity to do so.

In addition, a faculty appeal committee held hearings between April 14 and May 2, 2013. ¶ 148. Tarasenko was represented by counsel and participated in the hearings. Document #1 at 30. Tarasenko also submitted a closing brief. ¶ 150. Nowhere does her complaint allege that the identities of her accusers were withheld from her until the hearing or a date so close to the hearing that she could not prepare. Although the faculty appeal committee concluded that there was not enough evidence to support her termination, Bobbitt disagreed and terminated Tarasenko for cause. ¶¶ 152-53 and 156. A post-termination administrative review occurred when Tarasenko appealed this decision to the Board of Trustees. ¶¶ 158-59. Tarasenko was invited to attend and was allowed to have representation at the Board meeting. Document #1 at 67-68. Thus, Tarasenko received both a pre-deprivation hearing and a post-termination administrative review, during which she was allowed to be represented by counsel.

While the University may have violated its procedures during the investigation, this does not amount to a violation of the constitutional right to due process. "[F]ederal law, not state law or [University] policy, determines what constitutes adequate procedural due process." *De Llano*, 282 F.3d at 1035. "Minimum procedural requirements are a constitutional guarantee and they cannot be enlarged or reduced by the internal [University] handbook outlining termination procedures." *Id.* Accordingly, Tarasenko's complaint fails to state a claim upon which relief can be granted for a violation of her rights to procedural due process.

## C.     Sex and National Origin

"The Eighth Circuit Court of Appeals has held that a § 1983 claim based on alleged violation of equal protection in the employment context is analyzed in the same way as a Title VII claim of sex, race, or religious discrimination." *Mummelthie v. City of Mason City, Ia.*, 873 F. Supp. 1293, 1333 (N.D. Iowa 1995) *aff'd* 78 F.3d 589 (8th Cir. 1996). At the summary judgment stage, "if the plaintiff lacks direct evidence of discrimination, the plaintiff may survive the defendant's motion for summary judgment by creating an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas*." *McGinnis v. Union Pacific R.R.*, 496 F.3d 868, 873 (8th Cir. 2007). However, "a plaintiff need not plead facts establishing a prima facie case of discrimination under *McDonnell Douglas* in order to defeat a motion to dismiss." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013). Still, the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L. Ed. 2d 1 (2002)).

In *Hager*, the court held that the allegation that the plaintiff "was discharged under circumstances summarily [sic] situated nondisabled males, younger people, or those that did not require leave or accommodation were not" was insufficient to raise the allegations above a speculative level. *Id.* at 1014-15.  Tarasenko alleges: that "Plaintiff's compensation was less than similarly situated male professors";[7] that "Defendants' conduct constitutes gender discrimination"; that the "acts and omissions . . . against Plaintiff . . . amount to disparate impact based on gender. Specifically, Defendants' policies and practices relating to compensation, utilization of start up funds, and investigation of student allegations have a disparate impact on female professors;" and that the defendants "disciplined and terminated Plaintiff because of her gender . . . Defendants treated male employees who engaged in the same or similar alleged conduct more favorably."  ¶¶ 162, 190, 198, and 199.  Although Tarasenko's complaint gives a blow-by-blow account of the events that led to her termination, her sex discrimination allegations are conclusory, unsupported by any factual allegations.  She identifies no comparable male employees who were treated differently, nor does she make any other factual allegations that would raise her sex discrimination claim above the speculative level.

Tarasenko's claim that she was subjected to discrimination based on her national origin are similarly conclusory: she alleges that Gealt is of Russian descent and engaged in the conduct described in her complaint because he believed that she was of Ukrainian descent; that the acts and omissions of the defendants "amount to disparate treatment based on national origin"; that "Defendants' policies and practices relating to compensation, utilization of start up funds, and

_____

[7] Despite this allegation, Tarasenko has not alleged a claim under the Equal Pay Act, 29 U.S.C. § 206(d).

investigation of students allegations have a disparate impact on people of former Soviet Union descent"; and that "Defendants treated employees outside of Plaintiffs' protected class who engaged in the same or similar alleged conduct more favorably." ¶¶ 164-66, 202-04. These conclusory allegations fall short of the pleading standards of the Federal Rules of Civil Procedure as interpreted by *Twombly* and *Hager*.

While Tarasenko alleges that Bush made discriminatory comments regarding her national origin, these comments are not evidence of direct discrimination and are not enough to withstand a motion to dismiss. "Direct evidence is evidence that establishes 'a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision.'" *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006) (quoting *Putman v. Unity Health Sys.,* 348 F.3d 732, 735 (8th Cir. 2003)). It does not include "stray remarks in the workplace," "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process itself." *Browning v. President Riverboat Casino-Missouri, Inc.,* 139 F.3d 631, 635 (8th Cir. 1998) (quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S. Ct. 1775, 1804-05, 104 L. Ed. 2d 268 (1989) (O'Connor, J., concurring)).

The discriminatory remarks were allegedly made by Bush between 2006 and 2012 and include, "'No grants-gulag,' 'No Happy Students-gulag,' and 'No publications-gulag.'" ¶ 76. Tarasenko informed the administrators for the first time about this on May 29, 2012. ¶¶ 70 and 75. According to Tarasenko's complaint, Bush was involved in the decision-making process to the following extent: he was Tarasenko's direct supervisor, took part in the investigation, informed Tarasenko that the allegations were being investigated on July 23, 2012 and participated in a

meeting to discuss Tarasenko's employment on August 30, 2012. ¶¶ 21-22, 106, and 133. Tarasenko does not allege that Bush was an actual decision-maker in this case, nor that there was a connection between Bush's comments and the decision to terminate her employment. Gealt, Anderson and Robertson made the termination recommendation to Bobbitt, and Bobbitt made the final decision to terminate Tarasenko. ¶¶ 139-44.

In short, Tarasenko's complaint fails to state a claim upon which relief can be granted for discrimination based on her national origin.

**D.      Free Speech**

Tarasenko claims that she was terminated in retaliation for exercising her right to free speech. She generally describes her speech as "regarding educational quality, academic grading, grade appeals, and academic integrity." ¶ 193. More specifically, she alleges that she reported academic fraud by Eassa to UALR (¶ 52) and that she reported academic violations to the faculty senate executive committee (¶ 95).

"In the First Amendment context, when deciding whether a public employee's speech is protected, the threshold question is whether the employee's speech may be fairly characterized as constituting speech on a matter of public concern." *Hylla v. Transp. Commc'ns Int'l Union*, 536 F.3d 911, 917 (8th Cir. 2008) (quotations, citations, and alterations omitted). "To decide whether speech addressed a matter of public concern, we examine the speech's content, form, and context." *Bausworth v. Hazelwood Sch. Dist.,* 986 F.2d 1197, 1198 (8th Cir. 1993). The focus is on the employee's role in conveying the speech rather than the public's interest in the topic. *Id.* "When focusing on the employee's role, we consider whether the employee attempted to communicate the speech to the public at large and the employee's motivation in speaking." *Id.* "Unless the employee

is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment." *Buazard v. Meridith,* 172 F.3d 546, 548 (8th Cir. 1999). "When a public employee's speech is purely job-related, that speech will not be deemed a matter of public concern." *Id.*

Tarasenko was a professor at a public university and, according to her complaint, in that capacity reported academic fraud and academic violations to her employer. Her motivation in providing this information was not to communicate it to the public at large but to communicate it to the University; and her role was that of a University employee, not a concerned citizen. This was not a speech of public concern and, therefore, was not protected speech under the First Amendment. *Cf. McCullough v. Univ. of Ark. for Med. Sciences*, 559 F.3d 855, 865-67 (8th Cir. 2009) (an employee's internal complaints about sexual harassment were not matters of public concern); *Kozisek v. Cnty. of Seward, Neb.*, 539 F.3d 930, 937 (8th Cir. 2008) (the first amendment "does not protect expressions made as part of the employee's job duties"); *Wingate v. Gage County Sch. Dist. No. 34*, 528 F.3d 1074, 1081 (8th Cir. 2008) (speech "as an employee concerned with the District's internal policies and practices" was not a matter of public concern).

Tarasenko's complaint fails to state a claim upon which relief may be granted for violation of her right to free speech under the First Amendment.

**E.      Title VII Retaliation**

Tarasenko alleges that the defendants retaliated against her for engaging in activity protected by Title VII, including but not limited to her complaints of discrimination in the work place and comments about her national origin. ¶ 207. The factual basis for this claim appears to be Tarasenko's allegation that at a meeting on May 29, 2012, with Robertson, Pellicane, Gealt, Drale,

Lewis, and Al-Shukri regarding Eassa's allegations against her, she informed them of ethnic

comments directed toward her by Bush between 2006 and 2012. ¶¶ 65-75. The defendants note that

these comments were made more than seventeen months prior to the date that Bobbitt terminated

her employment (November 18, 2013) and four months prior to the date that Gealt and Robertson

recommended that she be terminated (September 19, 2012). The defendants argue that as a matter

of law a four to eighteen-month time-gap is too long to support the inference of retaliation and that,

in any event, Tarasenko does not allege that Bobbitt knew that she had reported Eassa's ethnic

comments at the meeting on May 29, 2012. Tarasenko has not responded to defendants' arguments

on this point. Therefore, the defendants' motion to dismiss Tarasenko's Title VII retaliation claims

are granted.

F.      **State-Law Claims Against the University**

The defendants have moved to dismiss all of Tarasenko's state-law claims against the

University based on sovereign immunity. It is well settled that the University of Arkansas is the

State of Arkansas for purposes of the Eleventh Amendment and therefore is immune from suit. *See*

*Okruhlik v. Univ. of Ark. ex rel. May*, 255 F.3d 615, 622 (8th Cir. 2001); *Buckley v. Univ. of Ark.*

*Bd. of Trustees*, 780 F. Supp. 2d 827, 830 (E.D. Ark. 2011). Furthermore, the University is immune

from suit on Tarasenko's state-law claims by virtue of Article 5, Section 20 of the Arkansas

Constitution. *See Arkansas Tech. Univ. v. Link*, 341 Ark. 495, 501-02, 17 S.W.3d 809, 813 (2000);

*Grine v. Bd. of Trustees, Univ. of Ark.*, 338 Ark. 791, 798, 2 S.W.2d 54, 59 (1999). That immunity

extends to actions against state officials in their official capacities. *Brown v. Ark. State Heating,*

*Ventilation, Air Conditioning and Refrigeration, Licensing Bd.*, 336 Ark. 34, 38, 984 S.W.2d 402,

403-04 (1999).  Consequently, all of Tarasenko's state-law claims against the University and the University administrators in their official capacities must be dismissed.

## G.      Tortious Interference With Contract

Tarasenko alleges that the individual defendants tortiously interfered with her contract with the University.  "A party to a contract and its employees and agents, acting within the scope of their authority, cannot be held liable for interfering with the party's own contract."  *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 959, 69 S.W.3d 393, 405 (2002).  All of the actions taken by the individual defendants in this case were actions taken in their capacities as agents and employees of the University.  Therefore, the complaint fails to state a claim upon which relief can be granted for tortious interference with a contract.

## H.      Tort of Outrage

To establish the tort of outrage under Arkansas law, a plaintiff must prove: (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized society; (3) the defendant's actions were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.  *Crawford Cnty. v. Jones*, 365 Ark. 585, 597, 232 S.W.3d 433, 442 (2006).  The Arkansas Supreme Court "takes a strict view in recognizing an outrage claim, particularly in the context of employment relationships."  *Id.* Tarasenko's complaint does not meet this strict standard.[8]

---

[8] Because all of Tarasenko's claims are dismissed, the Court will not address at this time the issues of whether the individual defendants are statutorily immune pursuant to Ark. Code Ann. § 19-10-305(a) and whether Tarasenko has stated a claim for punitive damages.

## CONCLUSION

Olga Tarasenko's complaint fails to state a claim upon which relief may be granted and therefore is dismissed without prejudice.  If Tarasenko wishes to file an amended complaint, she may seek leave to do so within thirty days from the entry of this Opinion and Order.  If she fails to seek leave to amend her complaint within thirty days, a judgment will be entered dismissing this action without prejudice.

IT IS SO ORDERED this 23rd day of October, 2014.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE